**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; Construction Industry Research and Service Trust Fund; and International Union of Operating Engineers, Local 150, AFL-CIO, | ) ) ) ) ) ) ) ) |
| | CIVIL ACTION |
| | NO. 20-CV-2685 |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| Wright Concrete Recycling, Inc., a dissolved Illinois Corporation, Black Dirt, Inc., and Steven R. Wright, Individually. | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiffs, Midwest Operating Engineers Welfare Fund; Midwest Operating Engineers Pension Trust Fund; Midwest Operating Engineers Retirement Enhancement Fund; Operating Engineers Local 150 Apprenticeship Fund; Local 150 IUOE Vacation Savings Plan; (collectively "the Funds"); Construction Industry Research and Service Trust Fund ("CRF"); and International Union of Operating Engineers, Local 150, AFL-CIO (hereafter, "Local 150" or "the Union"), bring this action to collect delinquent fringe benefit contributions, administrative dues and political action committee contributions from Defendants, Wright Concrete Recycling, Inc. and Black Dirt, Inc.; and to enforce a payment plan breached by Defendant Steven R. Wright who personally guaranteed payment on behalf of the corporate Defendants.

### COUNT I. SUIT AGAINST WRIGHT CONCRETE RECYCLING, INC. FOR DELINQUENT CONTRIBUTIONS

1. The Union is an employee organization under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(4); and a labor organization under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5).

2. Defendant Wright Concrete Recycling, Inc. ("WCR") is an "Employer" within the meaning of ERISA, 29 U.S.C. § 1002(5) and an "Employer" within the meaning of the LMRA, 29 U.S.C. § 152(2). It is a dissolved Illinois corporation engaged in the construction industry with its principal office in Mokena, Illinois.

3. WCR identified Steven Wright as President and Registered Agent with the Illinois Secretary of State (Exhibit A).

4. On May 8, 2008, WCR through its president Steven Wright, signed a Memorandum of Agreement (attached as Exhibit B) with the Union that adopted the terms of a collective bargaining agreement between the Union and Excavators, Inc., known as Excavators, Inc. Highway & Underground Agreement ("Excavators HHUA") (excerpts attached as Exhibit C).

5. On October 23, 2010, WCR through its president Steven Wright, signed a Memorandum of Agreement (attached as Exhibit D) that bound the company to the terms of a collective bargaining agreement between the Union and the Contractors Association of Will & Grundy Counties known as the Contractors Association of Will & Grundy Counties (Heavy, Highway and Underground Agreement) ("CAWGA") (excerpts attached as Exhibit E) (both agreements are hereby referred to collectively as the "CBAs").

6. Under the terms of the CBAs, WCR is obligated to make contributions to the Midwest Operating Engineers Health and Welfare Fund, the Midwest Operating Engineers

Pension Trust Fund, the Local 150 I.U.O.E Vacation Savings Plan, the Local 150 Apprenticeship Fund and the Construction Industry Research and Service Fund ("CRF").

7. The CBAs and the Agreements and Declarations of Trust incorporated therein require WCR to make fringe benefit contributions to the applicable Plaintiff fringe benefit funds. The Funds are "employee welfare benefit plans" and/or "plans" within the meaning of ERISA, 29 U.S.C. § 1132(e)(2).

8. The CBAs and Trust Agreements specifically require WCR to:

(a) Submit a monthly report stating the names and number of hours worked by every person on whose behalf contributions are required and accompany these reports with payment of contributions based on an hourly rate identified in the CBAs;

(b) Compensate the applicable fringe benefit funds for the additional administrative costs and burdens imposed by its delinquency through payment of liquidated damages in the amount of ten percent of untimely contributions, or twenty percent of such contributions should the applicable fringe benefit funds be required to file suit;

(c) Pay interest to compensate the applicable fringe benefit funds for the loss of investment income;

(d) Make its payroll books and records available to the applicable fringe benefit funds for the purpose of an audit to verify the accuracy of past reporting, and pay any and all costs incurred by the applicable fringe benefit funds in pursuit of an audit where a delinquency in the reporting or submission of contributions is identified;

(e) Pay the applicable fringe benefit funds' reasonable attorneys' fees and costs incurred in the prosecution of any action to collect outstanding reports, delinquent contributions, or compliance with an audit request;

(f) Furnish to the applicable fringe benefit funds a bond in an amount acceptable to the Funds.

9. The CBAs also require WCR to make contributions to CRF. CRF is a labor management cooperative committee as that term is defined under Section 302(c)(9) of the LMRA,

3

29 U.S.C. § 186 (c)(9). The CBAs place the same obligations on WCR with respect to CRF as it does the Funds.

10. The CBAs further require WCR to deduct administrative dues from employees' wages and remit those dues to the Union on a monthly basis utilizing a form remittance report. Where WCR does not do so, the Union is entitled to liquidated damages, attorneys' fees and any other cost of collection.

11. WCR has become delinquent in the submission of its contributions due the applicable fringe benefit funds and CRF, and administrative dues to the Union. As a result of this delinquency, it owes the applicable fringe benefit funds and CRF contributions, liquidated damages, interest, liquidated damages, attorneys' fees and any other cost of collection.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this action pursuant to ERISA, 29 U.S.C. §§ 1132, 1145 and 28 U.S.C. § 1331, because ERISA is a federal statute.

13. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA because the Funds are administered in Cook County, Illinois.

**Allegations of Violations**

14. ERISA states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

15. Where an employer fails to submit contribution reports and contributions timely, ERISA permits the Funds to file suit under ERISA to collect the fringe benefit contributions, liquidated damages, interest, attorneys' fees and costs. ERISA also permits the Funds to seek an injunction that requires submission of outstanding reports so that the Funds may determine whether

additional sums are due to the Funds. Alternatively, the Funds may seek an audit to establish whether such sums are due, and/or estimate the amounts due.

16. WCR has violated ERISA and breached the CBAs and the Trust Agreements because it has failed to timely submit its contributions to the applicable fringe benefit funds and refused to pay liquidated damages and interest that has accrued.

17. Upon careful review of all records maintained by the Funds, and after application of any and all partial payments made by WCR, there is a total of $438,514.53 known to be due the Funds from WCR, before the assessment of fees and costs, and subject to the possibility that additional contributions, liquidated damages, and interest will become due while this lawsuit is pending.

WHEREFORE, the Funds respectfully request that the Court:

A. Enter judgment in favor of the Funds and against WCR for all unpaid contributions as identified in WCR's contribution reports;

B. Enjoin WCR to perform specifically its obligations to the Funds, including submission of the required reports and contributions due thereon to the Funds in a timely fashion as required by the plans and by ERISA;

C. Enjoin WCR at the Funds' option to submit to an audit of its payroll books and records in order to determine whether WCR owes additional sums to the Funds, and pay the costs of such an audit; or alternatively at the Funds' option require WCR to pay any contributions reasonably estimated to be due by the Funds for the period when WCR failed and refused to timely submit contribution reports;

D. Enter judgment against WCR and in favor of the Funds for liquidated damages, interest, attorneys' fees and costs associated with all delinquent contributions;

E. Provide the Funds with such further relief as may be deemed just and equitable by the Court, all at WCR's cost.

## COUNT II. SUIT TO COLLECT CRF CONTRIBUTIONS FROM WRIGHT CONCRETE RECYCLING, INC.

1-9. CRF re-alleges and incorporates herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185 and 28 U.S.C. § 1331.

11. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because this Court has jurisdiction over the parties, and CRF's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

12. WCR has failed to make timely payment of all contributions acknowledged to be due according to WCR's own contribution reports and the collective bargaining agreement, and WCR has failed to pay interest and liquidated damages required by the CBAs. Accordingly, WCR is in breach of its obligations to the CRF under the CBAs.

13. That upon careful review of all records maintained by CRF, and after application of any and all partial payments made by WCR, there is a total of $12,527.55 known to be due to CRF from WCR subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

WHEREFORE, CRF respectfully requests that the Court:

A. Order WCR to submit any delinquent monthly contribution reports;

B. Enter judgment in favor of CRF and against WCR for all unpaid contributions, liquidated damages, interest, CRF's reasonable attorneys' fees and costs;

C. Enjoin WCR to perform specifically its obligations to CRF including timely submission of reports and contributions as required by the plans and the CBAs;

D. Award CRF such further relief as may be deemed just and equitable by the Court, all at WCR's cost.

## COUNT III. SUIT TO COLLECT UNION DUES AND POLITICAL ACTION COMMITTEE FUNDS FROM WRIGHT CONCRETE RECYCLING COMPANY, INC.

1-9. The Union re-alleges and incorporates herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

### Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185.

11. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties and the Union's principal office is located within the geographic jurisdiction of this Court.

### Allegations of Violations

12. WCR has failed to make timely payment of all administrative dues and political action committee funds acknowledged to be due according to WCR's own reports and the collective bargaining agreement. WCR is required to pay liquidated damages by the CBAs. Accordingly, WCR is in breach of its obligations to the Union under the CBAs.

13. That upon careful review of all records maintained by the Union, and after application of any and all partial payments made by WCR, there is a total of $12,692.53 known to be due to the Union from WCR before the assessment of fees and costs subject to the possibility that additional contributions and liquidated damages will become due while this lawsuit is pending.

7

WHEREFORE, the Union respectfully requests that the Court:

A. Order WCR to submit all delinquent monthly dues and political action committee reports;

B. Enter judgment in favor of the Union and against WCR for all unpaid dues, political action committee funds, liquidated damages, the Union's reasonable attorneys' fees and costs, including any amounts estimated to be due because WCR failed to submit all dues reports required by the CBAs;

C. Enjoin WCR to perform specifically its obligations to the Union including timely submission of reports and contributions as required by the plans and the CBAs;

D. Award the Union such further relief as may be deemed just and equitable by the Court, all at WCR's cost.

### COUNT IV. SUIT AGAINST BLACK DIRT, INC. FOR LIQUIDATED DAMAGES

1. The Funds re-allege and incorporates herein by reference paragraph 1 of Count I as if fully stated herein.

2. Black Dirt, Inc. ("Black Dirt") is an "Employer" within the meaning of ERISA, 29 U.S.C. § 1002(5) and an "Employer" within the meaning of the LMRA, 29 U.S.C. § 152(2). It is an Illinois corporation engaged in the construction industry with its principal office in Mokena, Illinois.

3. Black Dirt identified Steven Wright as President and Registered Agent with the Illinois Secretary of State (Exhibit F).

4. On October 23, 2010, Black Dirt through its president Steven Wright, signed a Memorandum of Agreement (Exhibit G) that bound the company to the terms of the CAWGA and the Trust Agreements referenced therein (Exhibit E).

5. Under the terms of the CAWGA, Black Dirt is obligated to make contributions to the Midwest Operating Engineers Health and Welfare Fund, the Midwest Operating Engineers

8

Pension Trust Fund, the Local 150 I.U.O.E Vacation Savings Plan, the Local 150 Apprenticeship Fund and the Construction Industry Research and Service Fund ("CRF").

6. The CAWGA and the Agreements and Declarations of Trust referenced and incorporated therein require Black Dirt to make fringe benefit contributions to the applicable Plaintiff fringe benefit funds. The Funds are "employee welfare benefit plans" and/or "plans" within the meaning of ERISA, 29 U.S.C. § 1132(e)(2).

7. The CAWGA specifically requires Black Dirt to:

(a) Submit a monthly report stating the names and number of hours worked by every person on whose behalf contributions are required and accompany these reports with payment of contributions based on an hourly rate identified in the CBA;

(b) <u>Compensate the applicable fringe benefit funds for the additional administrative costs and burdens imposed by its delinquency through payment of liquidated damages in the amount of ten percent of untimely contributions, or twenty percent of such contributions should the applicable fringe benefit funds be required to file suit</u> (emphasis added);

(c) Pay interest to compensate the applicable fringe benefit funds for the loss of investment income;

(d) <u>Make its payroll books and records available to the applicable fringe benefit funds for the purpose of an audit to verify the accuracy of past reporting, and pay any and all costs incurred by the applicable fringe benefit funds in pursuit of an audit where a delinquency in the reporting or submission of contributions is identified</u> (emphasis added);

(e) Pay the applicable fringe benefit funds' reasonable attorneys' fees and costs incurred in the prosecution of any action to collect outstanding reports, delinquent contributions, or compliance with an audit request;

(f) Furnish to the applicable fringe benefit funds a bond in an amount acceptable to the Funds.

**Jurisdiction and Venue**

8. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185 and 28 U.S.C. § 1331.

9. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because this Court has jurisdiction over the parties, and the Funds' principal office is located within the geographic jurisdiction of this Court.

**Allegations of Violations**

10. Pursuant to a random audit performed in 2016, it was determined that Black Dirt owed contributions to the various funds for the months of June 2016 through December 2016. Although those contribution amounts were paid by Black Dirt, it failed to pay liquidated damages associated with those untimely contributions. Accordingly, Black Dirt is in breach of its obligations to the Funds under the CAWGA.

11. That upon careful review and after application of any and all partial payments made by Black Dirt, there is a total of $1,703.87 known to be due to the Funds for the 2016 audit.

12. Black Dirt also owed contributions to the various funds for the months of November and December 2017 and January 2018. Although those contribution amounts were paid by Black Dirt, it failed to pay liquidated damages associated with those untimely contributions. Accordingly, Black Dirt is in breach of its obligations to the Funds under the CAWGA.

13. That upon careful review and after application of any and all partial payments made by Black Dirt, there is a total of $3,431.65 known to be due to the Funds for the untimely submission of contribution payments for the time period November and December 2017 and January 2018.

WHEREFORE, the Funds respectfully request that the Court:

A. Enter judgment against Black Dirt and in favor of the Funds for liquidated damages and attorneys' fees and costs associated with all delinquent contributions.

B. Provide the Funds with such further relief as may be deemed just and equitable by the Court, all at Black Dirt's cost.

### COUNT V. SUIT AGAINST WRIGHT CONCRETE RECYCLING, INC. FOR BREACH OF PAYMENT PLAN

1-9. The Funds, CRF and the Union re-allege and incorporate herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

10. As a result of WCR's delinquency, WCR owed the Funds and CRF contributions, liquidated damages, and interest, and dues and political action committee contributions to the Union. In order to forestall the filing of a lawsuit, WCR through its president Steven Wright, executed a Payment Plan Agreement ("Payment Plan") (Exhibit H). The parties executed the Payment Plan in Cook County, Illinois.

11. In that Payment Plan, WCR agreed to make installment payments of delinquent sums that it and Black Dirt owed the Funds, the Union, and CRF. WCR and Steven Wright further agreed to submit its forthcoming monthly reports, contributions, and dues payments timely. Steven Wright agreed to accept personal liability for the amounts owed by WCR and Black Dirt. In that Payment Plan, WCR, Black Dirt and Steven Wright consented to the entry of judgment against each of them in the event of breach of the Payment Plan.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBAs. Additionally, WCR executed the Payment Plan in Illinois and thus WCR availed itself of the law

11

of State of Illinois. Furthermore, WCR stipulated to the jurisdiction of this Court in the Payment Plan (Exhibit H).

13. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

## Allegations of Violations

14. WCR has breached its obligations under the Payment Plan because it has failed to make its required payments timely, and failed to submit its monthly reports, contributions, and dues timely. WCR has failed to pay liquidated damages and interest that has accrued. As a result of such breaches, the Funds, the Union, and CRF are entitled to the entry of judgment against WCR for all amounts identified as due in the Payment Plan, and all sums that became due following the execution of the Payment Plan.

15. That upon careful review of all records maintained by the Funds, there was a total of $278,204.49 due the Funds, the Union, and CRF from WCR and Black Dirt under the Payment Plan, before the assessment of attorney's fees and costs subject to the possibility that additional contributions, dues, interest, and liquidated damages would become due while this lawsuit is pending, and/or the possibility that WCR owes additional contributions and dues not yet identified by WCR in its reports. As of the date of the filing of this Complaint, there is an additional amount of $172,837.50 that has become due the Funds, the Union, and CRF since the execution of the Payment Plan, which will only increase as this lawsuit continues.

WHEREFORE, the Funds, the Union, and CRF respectfully request that Court enter judgment in favor of the Funds, the Union, and CRF and against Wright Concrete Recycling, Inc. for all amounts still due under the Payment Plan and for all amounts that have become due following the execution of the Payment Plan.

## COUNT VI.  SUIT AGAINST BLACK DIRT, INC. FOR BREACH OF PAYMENT PLAN

1-9. The Funds re-allege and incorporate herein by reference paragraphs 1 through 9 of Count IV as if fully stated herein.

10. As a result of Black Dirt's delinquency pursuant to a random audit and untimely submission of contribution payments, Black Dirt owed the Funds liquidated damages.  In order to forestall the filing of a lawsuit, Black Dirt, Inc. through its president Steven Wright, executed a Payment Plan Agreement (Exhibit H).  The parties executed the Payment Plan in Cook County, Illinois.

11. In that Payment Plan, Black Dirt agreed to make installment payments of delinquent sums that it and WCR owed the Funds.  Black Dirt further agreed to submit its forthcoming monthly reports, contributions, and dues payments timely.  Steven Wright agreed to accept personal liability for the amounts owed by Black Dirt, Inc. and WCR.  In that Payment Plan, Black Dirt, WCR and Steven Wright consented to the entry of judgment against each of them in the event of breach of the Payment Plan.

### Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBAs.  Additionally, Black Dirt executed the Payment Plan in Illinois and thus Black Dirt availed itself of the law of State of Illinois.  Furthermore, Black Dirt stipulated to the jurisdiction of this Court in the Payment Plan (Exhibit H).

13. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

**Allegations of Violations**

14. Black Dirt has breached its obligations under the Payment Plan because it has failed to make its required payments timely. Black Dirt has failed to pay liquidated damages. As a result of such breaches, the Funds are entitled to the entry of judgment against Black Dirt for all amounts identified as due in the Payment Plan, and all sums that became due following the execution of the Payment Plan.

15. That upon careful review of all records maintained by the Funds, there was a total of $278,204.49 due the Funds from Black Dirt and WCR under the Payment Plan, before the assessment of attorney's fees and costs while this lawsuit is pending. As of the date of the filing of this Complaint, there is an additional amount of $172,837.50 that has become due the Funds, the Union, and CRF since the execution of the Payment Plan, which will only increase as this lawsuit continues.

WHEREFORE, the Funds respectfully request that Court enter judgment in favor of the Funds and against Black Dirt, Inc. for all amounts still due under the Payment Plan and for all amounts that have become due following the execution of the Payment Plan.

**COUNT VII. SUIT AGAINST STEVEN R. WRIGHT, INDIVIDUALLY, FOR BREACH OF PAYMENT PLAN**

1-9. The Funds, CRF and the Union re-allege and incorporate herein by reference paragraphs 1 through 9 of Count I as if fully stated herein.

10. As a result of Wright Concrete Recycling, Inc. and Black Dirt, Inc.'s ("the Companies") delinquency, the Companies owed the Funds and CRF contributions, liquidated damages, and interest, and dues and political action committee contributions to the Union. In order to forestall the filing of a lawsuit, the Companies, through their president Steven Wright, executed

a Payment Plan Agreement (Exhibit H).  The parties executed the Payment Plan in Cook County, Illinois.

11. In that Payment Plan, the Companies though Steven R. Wright agreed to make installment payments of delinquent sums that they owed the Funds, the Union, and CRF. Steven Wright further agreed to submit the Companies' forthcoming monthly reports, contributions, and dues payments timely.  Further, Steven Wright agreed to accept personal liability for the amounts owed by the Companies.  In that Payment Plan, Steven Wright consented to the entry of judgment against each of them, and himself, in the event of breach of the Payment Plan.

## Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to § 301 of the LMRA, 29 U.S.C. § 185, because the Payment Plan is an extension and modification of the CBAs. Additionally, Steven R. Wright executed the Payment Plan in Illinois and thus Steven R. Wright availed himself of the law of State of Illinois.  Furthermore, Steven R. Wright stipulated to the jurisdiction of this Court in the Payment Plan (Exhibit H).

13. Venue is proper in this Court pursuant to 29 U.S.C. § 185(a) because the Court has jurisdiction over the parties.

## Allegations of Violations

14. Steven R. Wright has breached his obligations under the Payment Plan because he has failed to make the required payments timely.  Steven R. Wright has failed to pay liquidated damages and interest that has accrued.  As a result of such breaches, the Funds, the Union, and CRF are entitled to the entry of judgment against Steven R. Wright for all amounts identified as due in the Payment Plan, and all sums that became due following the execution of the Payment Plan.

15. That upon careful review of all records maintained by the Funds CRF and the Union, there was a total of $278,204.49 due the Funds, the Union, and CRF from Steven R. Wright under the Payment Plan, before the assessment of attorney's fees and costs subject to the possibility that additional contributions, dues, interest, and liquidated damages would become due while this lawsuit is pending, and/or the possibility that Steven R. Wright owes additional contributions and dues not yet identified by the Companies in their reports. As of the date of the filing of this Complaint, there is an additional amount of $172,837.50 that has become due the Funds, the Union, and CRF since the execution of the Payment Plan, which will only increase as this lawsuit continues.

WHEREFORE, the Funds, the Union, and CRF respectfully request that Court enter judgment in favor of the Funds, the Union, and CRF and against Steven R. Wright for all amounts still due under the Payment Plan and for all amounts that have become due following the execution of the Payment Plan.

Dated: May 4, 2020                                      Respectfully submitted,

                                                        By:  s/ Brad H. Russell
                                                             One of the Attorneys for the Plaintiffs

Attorneys for the Funds and CRF:                        Attorneys for Local 150:

Dale D. Pierson *(dpierson@local150.org)*               Dale D. Pierson *(dpierson@local150.org)*
Brad H. Russell *(brussell@local150.org)*               Brad H. Russell *(brussell@local150.org)*
Institute for Worker Welfare, P.C.                      Local 150 Legal Dept.
6140 Joliet Road                                        6140 Joliet Road
Countryside, IL 60525                                   Countryside, IL 60525
Ph: (708) 579-6669                                      Ph: (708) 579-6663
Fx: (708) 588-1647                                      Fx: (708) 588-1647